**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

AZANIAH BLANKUMSEE,

Plaintiff,

v.

SHANEA ROSS, et al.,

Defendants.

Civil Action No.: JRR-25-2070

**MEMORANDUM OPINION**

Self-represented Plaintiff Azaniah Blankumsee, an inmate presently incarcerated at Jessup Correctional Institution ("JCI"), filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 against Shanea Ross, Damean Stewart, Yevonicia Boyd, and Elijah Garnett. ECF No. 1. Mr. Blankumsee alleges he was denied adequate medical care at JCI in violation of the Eighth Amendment. *Id.* On November 10, 2025, Defendants filed a Motion to Dismiss or Alternatively for Summary Judgment. ECF No. 13. Mr. Blankumsee opposes the Motion. ECF No. 25. Defendants replied. ECF No. 29. Having reviewed the submitted materials, the Court finds no hearing is necessary. Local Rule 105.6 (D. Md. 2025). For the reasons set forth below, Defendants' Motion, construed as a motion to dismiss, will be granted.

**BACKGROUND**

Mr. Blankumsee states that in 2022 after he was transferred to JCI, he contacted the medical department and Chief of Security Ross to inform them of his chronic ingrown toe nails which required treatment and surgery. ECF No. 1 at 2. Surgery was completed on his right foot and Defendant Ross approved Mr. Blankumsee to order wide toe box shoes. *Id.* After Mr. Blankumsee obtained one pair of shoes, Property Officer Garnett began returning all subsequent orders due to

their price or color. *Id.* Mr. Blankumsee contacted Ross about Garnett's actions; she directed him to contact the medical department via a sick call. *Id.* at 3.

On January 30, 2025, during a chronic care appointment, Dr. Mulefu Obsu prescribed Mr. Blankumsee a bottom bunk pass, a wide size 9 medical shoe (from any available vendor), and "meals on wheels." ECF No. 1 at 3; ECF Nos. 1-7, 1-8. Mr. Blankumsee brought the updated documentation to Officer Garnett, who responded, "I don't care what the doctor say, if you order shoes, I'm sending them back." ECF No. 1 at 3. Prior to this incident, on July 24 and August 12, 2024, respectively, Mr. Blankumsee had Nike Bo Jackson sneakers and Timberland boots confiscated. ECF Nos. 1-4, 1-5. Mr. Blankumsee filed a grievance and wrote a letter to Ross, dated September 13, 2024, identifying his medical diagnosis and treatment plan; Ross allegedly responded to the letter stating that JCI already had size 9 shoes available. ECF No. 1 at 3; *see* ECF No. 1-6. However, in the Inmate Response Form attached to the Complaint, dated October 21, 2024, Ross directs him to provide updated documentation for her to review his request. ECF No. 1-6. On an unknown date, after Boyd became Chief of Security, Mr. Blankumsee also wrote her a letter about his concerns. ECF No. 1-9.

After the alleged incident with Garnett, Mr. Blankumsee filed a grievance about the incident, No. JCI-0237-25, which Warden Stewart denied on March 4, 2025. ECF No. 1 at 3-4; *see* ECF No. 1-1. Despite the medical order, Stewart stated that unapproved vendors are not permitted to provide non-medical footwear and explained that "Nike Bo Jackson" sneakers are not considered orthopedic shoes and were not covered. ECF No. 1 at 4; ECF No. 1-1 at 1. On May 30, 2025, Stewart denied a second grievance, No. JCI-0701-25, for the same reasons. *Id.*; *see* ECF No. 1-2. Mr. Blankumsee was directed to order the prescribed shoes from an approved vendor. ECF No. 1-2 at 1. On June 17, 2025, Mr. Blankumsee received a pair of shoes from JCI but, he

alleges, they did not have a wide toe box as directed by Dr. Obsu. ECF No. 1 at 3; *see* ECF No. 1-7.

Mr. Blankumsee asserts that Defendants delayed or denied him medical treatment for a serious medical need. ECF No. 1 at 6. He further avers that his feet bled because the provided shoes were too tight and he suffered severe pain as a result of Defendants' misconduct. *Id.* Now, Mr. Blankumsee has limited mobility rendering him disabled. *Id.* He seeks injunctive relief and damages. *Id.* at 7.

**STANDARDS OF REVIEW**

Defendants' Motion is styled as a motion to dismiss under FED. R. CIV. P. 12(b)(6) or, in the alternative, for summary judgment under FED. R. CIV. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436–37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). Under Rule 12(b)(6), however, a court, in its discretion, may consider matters outside the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." FED. R. CIV. P. 12(d); *Adams Hous., LLC v. City of Salisbury, Maryland*, 672 F. App'x 220, 222 (4th Cir. 2016) (*per curiam*). As is the case here, when a movant titles its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify

parties of the obvious." *Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C Wright & Miller, FEDERAL PRACTICE & PROC. § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167. The Court does not need to rely on Defendants' evidence to resolve this case. Therefore, conversion is unnecessary and Mr. Blankumsee's claims will be reviewed under the Rule 12(b)(6) standard.

A motion to dismiss pursuant to Rule 12(b)(6) "tests the sufficiency of the claims pled in a complaint." *Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019). To overcome a Rule 12(b)(6) motion, a complaint must allege sufficient facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

In evaluating the sufficiency of a plaintiff's claims, "a court 'must accept as true all of the factual allegations contained in the complaint,' and must 'draw all reasonable inferences [from those facts] in favor of the plaintiff.'" *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (alteration in original) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). However, the complaint must contain more than "legal conclusions,

elements of a cause of action, and bare assertions devoid of further factual enhancement[.]" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). Accordingly, in ruling on a motion brought under Rule 12(b)(6), a court "separat[es] the legal conclusions from the factual allegations, assum[es] the truth of only the factual allegations, and then determin[es] whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012) (quoting *Iqbal*, 556 U.S. at 1949–50).

Because Mr. Blankumsee is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That notwithstanding, the court must also abide the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## DISCUSSION

As set forth above, Defendants seek dismissal of the Complaint or, alternatively, summary judgment in their favor because (1) they are immune from suit, (2) Mr. Blankumsee fails to allege sufficient personal participation by Warden Stewart, and (3) Mr. Blankumsee fails to state an Eighth Amendment claim for denial of medical care. ECF No. 13-1.

### A. Personal Participation

Defendants contend Mr. Blankumsee's allegations that Warden Stewart decided two of his institutional grievances unfavorably to him is insufficient to allege his personal participation in a constitutional violation. Importantly, liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. *Trulock v. Freeh*, 275 F.3d 391, 402

(4th Cir. 2001); *see Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). A supervisor may be liable for the violation by a subordinates if the supervisor knew the subordinate engaged in conduct that posed an unreasonable risk of constitutional injury and failed to respond in such a manner that gives rise to an inference of deliberate indifference or tacit authorization of the subordinate's bad acts. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Mr. Blankumsee's allegation that Warden Stewart denied his grievances fails to state a claim. Denial of an inmate's grievances and appeals does not alone impose liability. *Whitington v. Ortiz,* 307 Fed, Appx. 179, 193 (10th Cir.2009) (unpublished) (explaining that "denial of the grievances alone is insufficient to establish personal participation in the alleged constitutional violations."); *Larson v. Meek,* 240 Fed. Appx. 777, 780 (10th Cir. 2007) (unpublished). Without more, Mr. Blankumsee fails to show that Stweart was involved in the alleged violation of his constitutional rights. The Complaint also lacks any facts showing that Stewart was aware of a subordinate defendant's misconduct or deliberate indifference. Accordingly, the claims against him will be dismissed.

**B. Denial of Medical Care**

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To demonstrate deliberate indifference to a serious medical need, a plaintiff must demonstrate that 1) objectively, the prisoner plaintiff suffered from a serious medical need; and 2) subjectively, prison staff were aware of the need for medical attention but either failed to provide it or to ensure it was available. *See Farmer v. Brennan*, 511

U.S. 825, 834–37 (1994); *see also Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). The subjective component requires "subjective recklessness" in the face of the serious medical condition. *See Farmer*, 511 U.S. at 839, 840; *see also Anderson*, 877 F.3d at 544. Under this standard, "the prison official must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)); *see also Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter … becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A]

prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk to the plaintiff the defendant actually knew about at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)) *see also Jackson*, 775 F.3d at 179 (physician's act of prescribing treatment raises fair inference that he believed treatment was necessary and that failure to provide it would pose an excessive risk).

Defendants assert that Mr. Blankumsee fails to state a claim because his ingrown toenails do not constitute a serious medical need. ECF No. 13-1 at 9. Defendants rely on several unreported opinions from district courts to support their position. *See id.* at 11 (citing *Langford v. Prima*, No. 17-cv-11862, 2018 WL 659247 at * 4 (E. D. Mich. Feb. 1, 2018); *Hall v. Conklin*, 966 F. Supp. 546, 548 (W. D. Mich. 1996); *Patterson v. Kim*, No. 1:08-CV-873, 2009 WL 2982753 at * 8 (W. D. Mich. Sept. 14, 2009); *Boardley v. First Correctional Medical*, No. Civ.A.03-343-KAJ, 2004 WL 2980727 at *2 (D. Del. Dec. 21, 2004)). Without more, the Court declines to conclude that a chronic ingrown toenail that allegedly required surgical intervention does not on its face present a serious medical need.

Defendants contend that even if Mr. Blankumsee's ingrown toenails constitute a serious medical need, he nevertheless fails to show that Ross, Boyd, and Garnett were deliberately indifferent. ECF No. 13-1 at 12-13. The Court agrees. Mr. Blankumsee's main contention seems to be that Dr. Obsu's order states "Patient may order medical shoe from vendor (any)"—which Mr. Blankumsee understood to mean he could order from any vendor regardless of JCI's approval. ECF No. 1-7; *see also* ECF No. 25-1 at 4. Based on his own allegations and the records attached to the Complaint, however, Mr. Blankumsee acknowledges that JCI policy requires medical shoes

be provided by approved vendors. This was explained to Mr. Blankumsee on several occasions. The facts as alleged in the Complaint (construed liberally) do not establish that Defendants were unwilling to provide him with the prescribed shoes, but rather that they could only provide him those shoes from an approved vendor. These allegations do not show that Defendants failed to provide adequate medical care or to ensure that it was available to Mr. Blankumsee. Further, Mr. Blankumsee acknowledges that JCI ultimately did provide him shoes. In his opposition, however, Mr. Blankumsee complains that what was provided was a pair of shoes to be worn for treatment of a diabetic condition, which did not have a sufficiently wide toe box. ECF No. 25-1 at 5. Neither the Complaint nor his opposition attribute this specific alleged failure to any Defendant; thus it is not sufficient to support his asserted claim. As such, Mr. Blankumsee's Complaint will be dismissed.[1]

## CONCLUSION

For the foregoing reasons, Defendants' Motion, construed as a motion to dismiss, will be granted. A separate Order follows.

August 24, 2026

/S/

Julie R. Rubin
United States District Judge

[1] Because the Complaint fails to state a claim for relief, Mr. Blankumsee is not entitled to the injunctive relief he seeks in his opposition. *See* ECF No. 25.